UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RICHARD GLEASON and MARY
GLEASON,

                              Plaintiffs,

                -against-

THE COUNTY OF PUTNAM, THE TOWN
OF CARMEL, McLAREN ENGINEERING
GROUP, JOHN & JANE DOES 1-20,

                              Defendants.

---

23-cv-04464

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiffs Richard Gleason and Mary Gleason ("Plaintiffs"), initiated this action on May 31, 2023, alleging violations of Title II of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, 29 U.S.C. § 794 *et seq*., 42 U.S.C. § 1983, the New York State Executive Law 15 § 296 *et seq*. ("NYSHRL"), as well as New York state law claims of unlawful taking/adverse possession without compensation against Defendants the County of Putnam ("Putnam"),  the Town of Carmel ("Carmel"), McLaren Engineering ("McLaren") and John and Jane Does 1-20 ("Does") (together, with the County of Putnam, the Town of Carmel, and McLaren Engineering, the "Defendants"). (ECF No. 1, the "Complaint.") Presently before the Court is McLaren's Motion seeking to Dismiss Plaintiffs' claims asserted against it and Defendants Putnam and Carmel's crossclaims pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). (ECF No. 34.) For the following reasons, Defendant McLarens' Motion to Dismiss is GRANTED.

## BACKGROUND

The following facts are derived from the Complaint and are taken as true and constructed in the light most favorable to the Plaintiff at this stage.

Plaintiffs are octogenarians with alleged disabilities residing on Farview Road in Carmel, Putnam County, New York. (Compl. ¶ 4.)  On May 1, 2023, the Putnam County Highways & Facilities announced the Drewville Road bridge replacement project ("the Project"). (*Id*. ¶ 25.) Putnam stated the bridge was in poor condition and was to be replaced in the same location. (*Id*.). Drewville Road would be closed until the replacement structure was finalized. (*Id*.). McLaren served as Putnam's Design Engineers. (*Id.*). Putnam and McLaren created a detour route for cars, along with a separate truck detour, while Drewville Road was closed. (*Id.*). Carmel was to provide additional enforcement within construction and detour areas. (*Id.*).

Fairview Road has a "steep incline, dangerous curve with no road markings." (*Id.* ¶ 5.) Allegedly, since the "commencement of the Drewville Bridge Project" Fairview Road "has been inundated with both commercial and non commercial vehicle traffic traveling in an aggressive manner and in excess of the speed limit." (*Id*. ¶ 5.) Plaintiffs were able to walk after the detour scheme was implemented but decided not to do so any longer after "several close calls with traffic" allegedly "created by the detour." (*Id*. ¶ 16.) Plaintiffs continue to drive after the detour was created, but allege they are "unable to safely exit and enter their driveway while operating their motor vehicle." (*Id*. ¶ 17.) Plaintiffs allege that in previous attempts to exit their driveway they were "forced to back down their driveway due to excessive high speed traffic" thus "caus[ing] plaintiff to be late for a medical appointment" and to "call for alternative transportation." (*Id*. ¶ 18.)

Plaintiffs assert that the detour and the alleged lack of enforcement limits their "entry and egress to and from their residence." (*Id*. ¶ 28.) The detour allegedly restricts Plaintiffs' ability to "enter and exit the streets where they reside or need to reach businesses and other places necessary for their independent daily living." (*Id*. ¶ 29.) The Project's detour plan was supposed to limit

access to Fairview Road to residential traffic and emergency vehicles but is supposedly used as a "high speed shortcut." (*Id*. ¶ 36.) Plaintiffs assert their "numerous communications" to Putnam and Carmel officials "have been all but ignored," with "[a]ny responses from Defendants [being] tantamount to lip-service." (*Id*. ¶ 37.) Due to the "speeding vehicles recklessly transversing Fairview Road" Plaintiffs are "unable to safely enter and exit [their] driveway." (*Id*. ¶ 38.) Plaintiffs state they have been denied "the opportunity to participate in or benefit from the County of Putnam and the Town of Carmel's services, programs, or activities related to the provision of public streets." (*Id*. ¶ 35.) Plaintiffs further state that they have "otherwise been discriminated against by defendants by reason of" their alleged disabilities. (*Id*.).

Due to the alleged impact of the Project, Plaintiffs assert claims under the ADA, the RA, 42 U.S.C. § 1983, NYSHRL, and New York state law claims for unlawful taking/adverse possession without compensation, and seek injunctive and declaratory relief, in addition to reasonable attorneys' fees. (*Id*. ¶¶ 46, 49, 52, 54, 56.)

## PROCEDURAL HISTORY

Plaintiffs, represented by counsel, commenced this action by filing their complaint ("the Complaint") asserting multiple claims against the Defendants on or about May 31, 2023. (ECF No. 7.) On October 26, 2023, McLaren filed a motion to dismiss and its memorandum of law in support (the "Motion" or "Mot.", ECF Nos. 34 and 35.) Defendants Putnam and Carmel submitted declarations in support of McLaren's motion to dismiss Putnam and Carmel's cross-complaints against McLaren (ECF Nos. 36 and 37, respectively). Plaintiff filed an opposition to the Motion (the "Opposition" or "Opp.", ECF No. 35.) McLaren also filed a reply in further support of the Motion (the "Reply", ECF No. 38.)

## LEGAL STANDARD

### A.  Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") provides in relevant part, that a case is properly dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate it. When resolving a Rule 12(b)(1) motion for lack of lack of subject matter jurisdiction, the court may refer to evidence outside the pleadings. *See Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir.1986). Plaintiff bears the burden of demonstrating by a preponderance of the evidence that subject matter jurisdiction exist. *See Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir.1996)

### B.  Rule 12(B)(6)

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents

that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Plaintiffs bring claims pursuant to the ADA, RA, § 1983, NYSHRL, and New York state law claims against the Defendants. Defendants Putnam and Carmel also bring crossclaims against Defendant McLaren. Plaintiffs' ADA, RA and § 1983 claims must be dismissed, and the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims and Defendants' state law crossclaims.

### A. Title II of the ADA and the RA Claims

The ADA and RA "impose identical requirements." *Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *Tennessee v. Lane*, 541 U.S. 509, 513 (2004). Section 504 of the RA provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

To establish a violation of Title II, a plaintiff must allege that (1) he or she is a qualified individual with a disability; (2) the defendants are subject to the ADA; and (3) he or she was "denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of [his or her] disabilities." *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003). To establish a claim under the RA, a plaintiff must also demonstrate that the defendant receives federal funding. *Id.*

Plaintiffs allege they suffer from impairments, but they do not demonstrate they are disabled persons under Title II of the ADA. To be a "qualified individual" under the ADA and RA, a plaintiff must allege two elements: 1) that they have a physical or mental impairment; and 2) that this impairment substantially limits one or more major life activities. *Schwartz v. Comex*, No. 96 CIV. 3386 LAP, 1997 WL 187353, *2 (S.D.N.Y. Apr. 15, 1997). Though Plaintiffs acknowledge this standard (*see* Compl. ¶ 14), they do not specifically allege the nature of their disabilities and which of their major life activities are hindered. This renders their claims fatally deficient as "plaintiffs [must] do more than simply allude to [their] impairments in [their] pleading; [they] must plead *how* those impairments significantly impacted [their] major life activities, or they will not survive a motion to dismiss." *Collins v. Giving Back Fund*, No. 18 CIV. 8812 (CM), 2019 WL 3564578, *13 (S.D.N.Y. Aug. 6, 2019) (dismissing RA claim where Complaint was "devoid of allegations tending to show that these conditions had a significant impact on [Plaintiff's ability] to care for [themselves,] perform manual tasks, walk, see, hear, learn, speak or breathe").

Plaintiffs state that they suffer from "pulmonary and orthopedic conditions" that "make it impossible to walk on the street in front of [their] home . . . which [they] have done for the last 50 years." (Compl. ¶¶ 38-39.) As alleged in the Complaint, Plaintiffs attribute their inability to walk to the creation and implementation of the road detour which has resulted in increased traffic and

"speeding vehicles transvers[ing] Fairview Road." (*Id.* ¶ 39.) Importantly, Plaintiffs state that "[p]rior to the implementation of the detour scheme, they, notwithstanding their disabilities, were able to safely engage in the aforementioned activities," meaning safely walk and utilize the road in front of their home. (*Id.*). This statement, which must be taken as true, undermines Plaintiffs' claims and supports a finding that Plaintiffs are not "qualified individuals" for the purposes of the ADA and RA. Plaintiffs alleged inability to walk about their street and drive their vehicle is not a function of a disability but rather due to the increased traffic resulting from the detour scheme. Plaintiffs' allegations reasonably infer they previously were and currently are able to walk about without issue, that means their mobility – a major life activity – is not hindered by their pulmonary and orthopedic disability. Plaintiffs' own complaint reveals they are choosing not to walk or drive: "Plaintiff's [sic] after several close calls with traffic, created by the detour, no longer walk on their own block." (*Id.* ¶ 16.) Thus, while Plaintiffs might have medical conditions which under certain circumstances may rise to the level of a disability, their failure to assert how the allege impairment(s) significantly impacts a major life activity(s) is insufficient to qualify as a disability under the ADA and RA. *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005) (noting that "[n]ot every impairment is a 'disability' within the meaning of the ADA.").

Moreover, the Complaint does not sufficiently plead Plaintiffs experienced exclusion. Plaintiffs only offer general, nonspecific allegations of exclusion, stating they are unable to safely enter and exit their driveway due to the increased traffic and speeding vehicles on Fairview Road, which they attribute to the conduct of all of the Defendants. (Compl. ¶ 39), and that likewise they are unable to "walk on the street in front of [their] home, of which [they] [have] done for the last 50 years." (*Id.*). Simultaneously, Plaintiffs admit that after the Project commenced and the traffic detour scheme was implemented, they were able to walk about their road and are only now

deciding against doing so after reported "close calls." (*Id*. ¶ 16.) Similarly, Plaintiffs do not allege they no longer drive – the Complaint alleges that after the detour scheme was implemented Plaintiffs, at times, have had to call for alternative transportation and that Plaintiffs are unable to "safely exit and enter" their driveway while driving. (*Id*. ¶ 17.) In another section in the Complaint Plaintiffs acknowledge their ability to drive, noting that because the detour was in place they had to change routes to enter their driveway. (*Id*. ¶ 19.) Based on the facts alleged in the Complaint, Plaintiffs are not being excluded from walking or driving, as required under the ADA and RA, but rather their ability to do so requires greater caution.

Even if Plaintiffs were not able to drive and walk and "denied the opportunity to participate in or benefit from the County of Putnam and the Town of Carmel's services, programs, or activities related to the provision of public streets" (*Id*. ¶ 35), they are unable to demonstrate this is by reason of their disabilities. To plausibly assert a claim, Plaintiffs' disabilities must be a "substantial cause" of their exclusion. *Henrietta*, 331 F.3d 261, 289). Assuming for the purposes of this motion that Plaintiffs' conditions qualified as disabilities, Plaintiffs' complaint falls short of demonstrating any exclusion was substantially based on disabilities. Instead, the basis appears to be the post-detour conditions on Fairview Road, compounded by the municipalities failure to regulate or enforce traffic rules and regulations on the road. According to Plaintiffs' own complaint, Fairview Road was already a hazardous road with a "steep incline" and a "dangerous curve with no road markings." (Compl. ¶ 5.) Indeed, before the detour scheme was even enacted, "on at least one occasion an out of control vehicle was propelled onto Plaintiffs' property and but for a tree, the vehicle would have struck the plaintiffs [sic] home." (*Id*.). Notably, Plaintiffs do not allege when accidents, if any, have occurred since the detour was implemented, and if so with what frequency. The crux of Plaintiffs allegations is that they have been deprived of (or excluded from) their ability

to walk and drive in front of their home due to the "lack of [traffic regulation] enforcement" "within the construction and detour areas." (*Id.* ¶ 28.) Even if liberally construed, Plaintiffs' allegations do not rise to an exclusion based on a disability which is required in order to state a plausible claim under the ADA and RA. Plaintiffs' ADA and RA claims would further fail as against Defendant McLaren for other reasons.

Generally, Title II of the ADA and RA apply to public entities and do not apply to private entities. *Olszyk v. Thorne*, No. 320CV0445TJMML, 2020 WL 5634328, *6 (N.D.N.Y. June 17, 2020) (dismissing Title II ADA claim against Salvation Army and its employees because Salvation Army is not a public entity). *See also Clark v. Student Loan Fin. Corp.*, No. 18-CV-9354 (JPO), 2019 WL 4412571, *3 (S.D.N.Y. Sept. 16, 2019) (dismissing Title II ADA claims where defendants were not public entities); *Green v. City of New York*, 465 F.3d 65, 79 (2d Cir. 2006) (affirming dismissal of Title II ADA claim against St. Luke's Hospital due to it being a private, not public entity); *Wiltz v. New York Univ.*, No. 119CV03406GHWSDA, 2019 WL 8437456, *7 (S.D.N.Y. Dec. 23, 2019) (dismissing Title II ADA claim against NYU due to it not being a public entity within the meaning of the statute); *Pierce v. Fordham Univ., Inc.*, 692 F. App'x 644 (2d Cir. 2017) (affirming dismissal of Title II ADA claim against Fordham due to it not being a public entity within the meaning of the statute). In the Complaint, Plaintiffs identify McLaren as the Design Engineers, who purportedly played a role in the creation of the detour plan/scheme. (*Id.* ¶ 25.). Nowhere in the Complaint is it referred to as a public entity. Moreover, McLaren is in-fact a private entity. (ECF No. 39, Decl. of G. Bartucci.)

Additionally, the RA requires that an individual plaintiff allege that they were excluded from a "program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Plaintiffs' complaint alleges the RA applies "because upon information and belief the County of Putnam and

the Town of Carmel receives federal funds." (*see* Compl. ¶ 34.) Plaintiffs also allege that Putnam

stated in a media interview the Project was to be "'largely funded by a federal grant with minimal

costs to the county.'" (*Id*. ¶ 3.)  Beyond asserting that Putnam and Carmel are the recipients of

federal funds, Plaintiffs fails to assert similar allegations as against McLaren. Such failure does

not bring McLaren within the scope of the RA. Accordingly, Plaintiffs' claims against McLaren

under the ADA and the RA must be dismissed with prejudice.

### B.  Violation of 42 U.S.C. § 1983

To prevail on any claim under § 1983, a plaintiff must show "(1) the deprivation of a right

secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was

committed under color of state law." *Landon v. Cnty. of Orange*, No. 08 Cv. 8048 (CS) (LMS),

2009 WL 2191335, at *4 (S.D.N.Y. July 23, 2009); *see also Chambliss v. Rosini*, 808 F. Supp. 2d

658, 666 (S.D.N.Y. 2011). "Because the United States Constitution regulates only the Government,

not private parties, a litigant claiming that his constitutional rights have been violated must first

establish that the challenged conduct constitutes state action." *Fabrikant v. French*, 691 F.3d 193,

206 (2d Cir. 2012) (quoting *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005)).

Thus, a private entity may be subject to a § 1983 claim under limited circumstances.

The threshold issue is whether the challenged conduct constitutes state action. *Fabrikant*, 691

F.3d at 206. Three main tests have emerged for determining whether the actions of a private entity

such as McLaren can be considered state action: the compulsion test, the nexus test, and the public

function test. *Wilson v. HSBC Bank, USA*, No. 16-CV-8405 (NSR), 2018 WL 1449204, *14

(S.D.N.Y. Mar. 22, 2018). From the face of the Complaint, it is evident that McLaren is not a state

actor for the purposes of § 1983. The Complaint scarcely mentions McLaren, merely stating that

McLaren served as Putnam and Carmel's "[d]esign [e]ngineers." (Compl. ¶ 25.) Plaintiffs assert

that Putnam and Carmel provide public services and McLaren "ha[s] been delegated the power to administer those services and actually do administer those services." (Compl. ¶ 45.) Plaintiffs do not particularize what specific powers Putnam and Carmel delegated to McLaren. Plaintiffs claim the "Detour Scheme [was] enacted, implemented and administered under color of New York State municipal law." (Compl. ¶ 51.) These are conclusory statements that, even construed liberally, do not push McLaren over the line into being a state actor. Plaintiffs do not allege that McLaren was compelled by Putnam and Carmel to provide its consulting services. No factual assertions are made that would demonstrate that McLaren acted under any "coercive power or significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky,* 457 U.S. 991, 1004 (1982). *See also McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) (affirming dismissal of § 1983 claim where private entity was not compelled by state to provide its services).

Plaintiffs do not allege a nexus between Putnam and Carmel and McLaren except that McLaren served as the design engineers and had some input into the creation of a detour scheme. At best, the allegations merely support a finding that McLaren, as a private entity, contracted with Putnam and Carmel to provide consulting services for the purpose of creating or formulating a traffic detour plan for the Project. While relevant, a private entity contracting with a municipality typically does not make the private entity a state actor. *See also Grogan v. Blooming Grove Volunteer Ambulance Corps,* 768 F.3d 259, 267 (2d Cir. 2014) (affirming dismissal of § 1983 claim noting that merely contracting with a municipality does not convert a private entity's services into state action); *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 492 (2d Cir. 2009) (noting that "[t]he government enters into contracts for all kinds of goods and services without converting its contractors into state actors"); *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982) (affirming finding

11

that petitioners failed to state a § 1983 claim, noting that "[a]cts of . . . private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts"). Simply because McLaren had input or created the detour scheme which was to be implemented by Putnam and Carmel does not create a sufficiently strong nexus that converts its conduct into state action. *Doe v. Rosenberg*, 996 F. Supp. 343, 352 (S.D.N.Y. 1998), aff'd, 166 F.3d 507 (2d Cir. 1999). *See also McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) (affirming dismissal of § 1983 claim, acknowledging that "although Defendants operated in a highly regulated context, the nexus between their challenged conduct and the state was insufficiently close for the conduct to qualify as state action").

Finally, Plaintiffs do not allege that McLaren provided a public function that would render its services state action. The public function test considers whether the action taken is "traditionally the exclusive prerogative of the State." *Jackson v. Metro. Edison Co*., 419 U.S. 345, 353 (1974). State action "may be found in situations where an activity that traditionally has been the exclusive, or near exclusive function of the State has been contracted out to a private entity." *Horvath v. Westport Libr. Ass'n*, 362 F.3d 147, 151 (2d Cir. 2004). It is difficult to envision how private consulting, a private service provided by a private entity, would be construed as public function done by the State and Plaintiffs' complaint makes no claims to that end. That McLaren created a detour scheme to be implemented by Putnam and Carmel is insufficient to convert its private consultancy into state action. *Rosenberg*, 996 F. Supp. 343, 354 ("[a]uthorization by the State does not constitute public function"). Plaintiffs do not allege any factual statements that could support McLaren's private consulting services being conduct equated with conduct which is typically reserved for the state and thus McLaren cannot be found to be performing a public function. Accordingly, Plaintiffs' § 1983 claim must be dismissed with prejudice as McLaren was not acting

under the color of state law. *Wilson v. HSBC Bank, USA*, No. 16-CV-8405 (NSR), 2018 WL 1449204, *14 (S.D.N.Y. Mar. 22, 2018) (dismissing § 1983 claim where "no indication whatsoever" that Defendant acted under the color of state law).

### C. State-law Claims and Crossclaims

Because Plaintiffs' ADA, RA and § 1983 claims must be dismissed, the Court, in its discretion, declines to exercise supplemental jurisdiction over Plaintiffs' state law claims and Defendants Putnam and Carmel's state law crossclaims. *See* 28. U.S.C. § 1367(c) (a district court may decline to exercise supplemental jurisdiction over a claim" if it "has dismissed all claims over which it has original jurisdiction"). Thus, Plaintiffs' Fourth Cause of Action and Fifth Cause of Action and Defendants' crossclaims are dismissed without prejudice to recommence in state court.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant McLaren's motion to dismiss Plaintiffs' First, Second and Third Causes of Action against Defendant McLaren with prejudice, and Plaintiffs' state law claims and Defendants Putnam and Carmel's state law crossclaims are dismissed without prejudice to recommence in state court. The Court waives the Initial Pre-Trial Conference requirement and directs the parties to submit a proposed Case Management Plan and Scheduling Order (blank form attached hereto) by September 11, 2024.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 34.

Dated:    August 27, 2024                           SO ORDERED:
          White Plains, New York

                                        _____
                                              NELSON S. ROMÁN
                                            United States District Judge

13

UNITED STATES DISTRICT COURT                                    Rev. Jan. 2012

SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x


                                                    **CIVIL CASE DISCOVERY PLAN**

                            Plaintiff(s),           **AND SCHEDULING ORDER**

        - against -



                            Defendant(s).    _____ CV _____ (NSR)


-------------------------------------------------------------x


 This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):


1.      All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c).  The parties are free to withhold consent without adverse substantive consequences.  (If all parties consent, the remaining paragraphs of this form need not be completed.)


2.      This case [is] [is not] to be tried to a jury.


3.      Joinder of additional parties must be accomplished by _____.


4.      Amended pleadings may be filed until _____.

5.      Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter.  The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6.      First request for production of documents, if any, shall be served no later than _____.

7.      Non-expert depositions shall be completed by _____.

        a.      Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

        b.      Depositions shall proceed concurrently.

        c.      Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8.      Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.      Requests to Admit, if any, shall be served no later than _____.

10.     Expert reports shall be served no later than _____.

11.     Rebuttal expert reports shall be served no later than _____.

12.     Expert depositions shall be completed by _____.

13.     Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.     **ALL DISCOVERY SHALL BE COMPLETED BY _____.**

15.     Any motions shall be filed in accordance with the Court's Individual Practices.

16.     This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.     The Magistrate Judge assigned to this case is the Hon. _____.

18.     If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.     The next case management conference is scheduled for _____, at _____.  (The Court will set this date at the initial conference.)

SO ORDERED.

Dated:   White Plains, New York

_____

_____

Nelson S. Román, U.S. District Judge